UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GERALD RUGGIERO,

                Plaintiff,

       -v-                                    5:17-CV-790

CITY OF CORTLAND,
NEW YORK, BRIAN
TOBIN, individually
and in his official capacity
as Mayor, RICHARD VAN
DONSEL, individually and in
his official capacity as
Corporation Counsel, DAVID
BRIGGS, individually and
in his official capacity as Tax
Assessor, ROBERT RHEA,
individually and in his official
capacity as Zoning Officer,
MARY KAY HICKEY, individually
and in her official capacity as
Chairperson of the Zoning Board
of Appeals Chairperson,
KATHRYN SILLIMAN, individually
and in her official capacity as
Alderman, BRIAN MYERS,
individually and in his official
capacity as Police Officer, JOHN
DOE(S), and JANE DOE(S),

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

GERALD RUGGIERO
Plaintiff, Pro Se
764 Sleepy Hollow Road
Cortland, NY 13045

OFFICE OF FRANK W. MILLER  FRANK W. MILLER, ESQ.
Attorneys for Defendants City of  CHARLES C. SPAGNOLI, ESQ.
   Cortland, New York, Brian Tobin,
   Richard Van Donsel, David Briggs,
   Robert Rhea, Mary Kay Hickey, and
   Kathryn Silliman,

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On July 19, 2017, pro se plaintiff Gerald Ruggiero ("Ruggiero" or "plaintiff"), a Cortland-area businessman who invests in rental properties, initiated this civil rights action against defendants County of Cortland, New York (the "County"), Cortland County District Attorney Mark Suben ("District Attorney Suben"), the City of Cortland, New York (the "City"), Mayor Brian Tobin ("Mayor Tobin" or "Tobin"), Corporation Counsel Richard Van Donsel ("Attorney Van Donsel"), Tax Assessor David Briggs ("Tax Assessor Briggs"), Zoning Officer Robert Rhea ("Zoning Officer Rhea"), Director of Administration and Finance Mack Cook ("Director Cook"), Director of Code Enforcement William Knickerbocker ("Director Knickerbocker"), Fire Chief Charles Glover ("Fire Chief Glover" or "Glover"), Zoning Board of Appeals Chairperson Mary Kay Hickey ("Chairperson Hickey"), Planning Commission Member Jim Reeners ("Commission Member Reeners"), Planning Commission Member Troy Beckwith ("Commission Member Beckwith"), Alderman Kathryn Silliman ("Alderman Silliman"), Alderman Ken Dye ("Alderman Dye"), Alderman Thomas Michales ("Alderman Michales"), Alderman John Bennett, Jr. ("Alderman Bennett"), Chief of Police F. Michael Catalano ("Police Chief Catalano"), Deputy Chief of Police Paul Sandy ("Deputy Chief Sandy"), Police Officer Brian Myers ("Officer Myers"), Police Officer Kenneth Bush ("Officer

Bush"), and John and Jane Does (collectively the "Does").

At the time he filed his complaint, Ruggiero also sought a temporary restraining order enjoining the enforcement of certain occupancy restrictions imposed by the City's zoning ordinances. According to plaintiff's filings, the extraordinary remedy of an injunction was warranted because the City and various City officials, many of whom he named as defendants in this action, were selectively enforcing the laws against him. Plaintiff's motion was denied on July 26, 2017. Thereafter, the twenty-one named defendants answered plaintiff's complaint.

On August 29, 2017, Ruggiero filed an amended pleading. This first amended complaint set forth eight federal causes of action pursuant to 42 U.S.C. §§ 1983 and 1985. This pleading also set forth a related cause of action based on the New York State Constitution. All of the named defendants filed new answers to plaintiff's new pleading.

On January 8, 2018, the County and District Attorney Suben (collectively the "County defendants") moved under Federal Rule of Civil Procedure ("Rule") 12(c) for a judgment on the pleadings dismissing Ruggiero's first amended complaint insofar as it asserted one or more claims against them.

That same day, the City, Mayor Tobin, Attorney Van Donsel, Tax Assessor Briggs, Zoning Officer Rhea, Director Cook, Director Knickerbocker, Fire Chief Glover, Chairperson Hickey, Commission Member Reeners, Commission Member Beckwith, Alderman Silliman, Alderman Dye, Alderman Michales, Alderman Bennett, Police Chief Catalano, Deputy Chief Sandy, Officer Myers, and Officer Bush (collectively the "City defendants") also filed a Rule 12(c) motion requesting complete dismissal of the various claims asserted against them.

Ruggiero opposed both filings. On November 14, 2018, the dismissal motions were

resolved in a forty-one page Memorandum–Decision & Order (the "November 14 MDO"). *Ruggiero v. City of Cortland*, 2018 WL 5983505 (N.D.N.Y. Nov. 14, 2018) ("*Ruggiero I*").

There, in addition to the voluminous factual allegations contained in his thirty-page operative pleading, the Court also considered additional factual allegations presented for the first time in plaintiff's opposition memoranda. *Ruggiero I*, 2018 WL 5983505. As the Court explained, this solicitude was appropriate because plaintiff is a *pro se* litigant. *Id*.

In *Ruggiero I*, the Court granted the County defendants' motion for judgment on the pleadings because prosecutorial immunity shielded District Attorney Suben, and therefore the County, from facing Ruggiero's § 1983 claims for false arrest and malicious prosecution. *Ruggiero I*, 2018 WL 5983505, at \*9-\*11. Those claims were dismissed with prejudice and those parties were terminated as defendants in this action.

The November 14 MDO also granted the City defendants' motion for judgment on the pleadings. *Ruggiero I*, 2018 WL 5983505, at \*12-\*18. As relevant here, the November 14 MDO dismissed with prejudice Ruggiero's § 1983 claims for false arrest, malicious prosecution, denial of medical treatment as well as his state law constitutional claim.

However, in light of the fact that Ruggiero requested leave to amend his complaint "in the event the Court finds deficiencies in one or more of his claims," the November 14 MDO dismissed *without* prejudice plaintiff's § 1983 claims for retaliation and equal protection. *Ruggiero I*, 2018 WL 5983505, at \*15, \*18. As the November 14 MDO explained, this course of action was appropriate because:

> In this case, Ruggiero's filings suggest he may have a plausible First Amendment retaliation claim and/or Fourteenth Amendment Equal Protection claim against one or more of the City defendants. See,

> e.g., Graham v. Macy's, Inc., 2016 WL 354897 at *10 (S.D.N.Y. Jan. 28, 2016) (observing that pro se litigant had been permitted opportunity to amend, at least in part, because her motion papers contained new allegations that "begin to—although they do not fully—remedy the deficiencies in her Complaint"). Accordingly, he will be given leave to replead the factual circumstances surrounding those claims. However, amendment of plaintiff's other claims would be futile and therefore he will not be permitted to replead them.

Ruggiero I, 2018 WL 5983505, at *18.

The November 14 MDO also carefully explained its expectations in the event Ruggiero chose to submit a renewed pleading:

> Any amended pleading filed by Ruggiero must be a complete pleading. In other words, it will supersede and replace his prior pleading in all respects. Plaintiff is advised that he cannot incorporate by reference any portion of his prior filings. And although plaintiff may attach documents to his pleading if he wishes, he is advised that he should plead within the numbered paragraphs of the complaint itself each fact or facts upon which he seeks to pursue a claim. Plaintiff is further advised that, to the extent practicable, he should plead with specificity the time, place, and description of each event or events on which he seeks to base a First Amendment or Equal Protection claim. Finally, although plaintiff has named eighteen different City officials and an unspecified number of Does, he should take care to identify the specific actor or actors responsible for each alleged instance of misconduct and describe how they were each "personally involved" in the constitutional violation.

Ruggiero I, 2018 WL 5983505, at *19.

Thus, the November 14 MDO afforded Ruggiero a thirty-day period in which to file an amended complaint "as to the First Amendment retaliation and Fourteenth Amendment Equal Protection claims against the City defendants in accordance with the instructions set forth above." Id.

On December 14, 2018, Ruggiero filed a second amended complaint. Shortly thereafter, the City defendants moved under Rule 12(b)(6) to dismiss plaintiff's renewed

- 5 -

pleading. According to defendants, plaintiff's second amended complaint: (1) failed to plausibly allege either a First Amendment retaliation or a Fourteenth Amendment Equal Protection claim; and (2) improperly re-asserted claims that had been dismissed with prejudice in *Ruggiero I*.

On January 22, 2019, Ruggiero filed an opposition to the City defendants' motion and included a cross-motion of his own in which he sought leave to file a third amended complaint. In reply, the City defendants urged the Court to deny plaintiff's request for leave to further amend.

The dueling motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. DISCUSSION[1]

As an initial matter, Ruggiero's cross-motion for leave to file a *third* amended complaint will be denied.

Although pro se plaintiffs are entitled to a significant measure of latitude when it comes to pleading and in matters of procedure, the solicitude afforded to a party who chooses to proceed without the benefit of a lawyer is not boundless. *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (explaining that "a *pro se* litigant lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection").

The City defendants correctly assert that *Ruggiero I* offered plaintiff a limited opportunity to replead two of his § 1983 claims, not *carte blanche* to take another crack at

---

[1] Although defendants have moved for pre-answer dismissal this time around, the relevant legal standard is the same as the one applied in *Ruggiero I* and will not be repeated here.

re-pleading the lawsuit anew. By the time the November 14 MDO issued, plaintiff had already amended his complaint once as of right. Notably, at that time plaintiff also enjoyed the benefit of the Court's consideration of the additional factual allegations that were set forth in his opposition submissions but not included in either of his first two pleadings. *Ruggiero I*, 2018 WL 5983505, at *7. The November 14 MDO determined, after carefully reviewing all of these documents, that permitting further amendment as to most of plaintiff's claims would be unproductive. *See id*.

However, it is precisely because of Ruggiero's status as a *pro se* litigant that the November 14 MDO granted in part his request for an opportunity to replead a couple of them. *Ruggiero I*, 2018 WL 5983505, at *18 (permitting amendment because "Ruggiero's filings suggest he may have a plausible First Amendment retaliation claim and/or Fourteenth Amendment Equal Protection claim against one or more of the City defendants").

And it is precisely because of Ruggiero's status as a *pro se* litigant that the November 14 MDO also gave him specific directions about what would (and what would not) suffice to state a plausible claim for relief under either of those two theories, and how to go about properly doing so in a single, unified pleading. *See Ruggiero I*, 2018 WL 5983505, at *15, *18.

Therefore, Ruggiero's request for leave to file a third amended complaint will be denied. And because plaintiff's other causes of action were dismissed with prejudice, only the sufficiency of the First Amendment retaliation claim and the Fourteenth Amendment Equal Protection claim will be considered. *Ruggiero I*, 2018 WL 5983505, at *18 (permitting limited amendment for proper development of those claims). Accordingly, the pertinent factual allegations set forth below are taken from the second amended pleading, Dkt. No. 67,

that plaintiff filed in response to the instructions in *Ruggiero I*.[2]

### A. **Selective Zoning and Retaliation**

In his prior pleading and related opposition submission, Ruggiero alleged that he was "taken out of" a Zoning Board of Appeals ("ZBA") meeting when he tried to speak on the record, and asserted that on April 7, 2015, Mayor Tobin and Zoning Officer Rhea "violated his 'personal space' at a 'public meeting.'" *Ruggiero I*, 2018 WL 5983505, at \*14-\*15.

The November 14 MDO noted that Ruggiero did not explain "when, how, or under what circumstances" that alleged action took place. *Ruggiero I*, 2018 WL 5983505, at \*14-\*15. As the Court explained, those missing facts were critical because only "certain kinds of disputes between private citizens and municipal officials can give rise to viable First Amendment claims." *Id*. at \*15; *see also Soundview Assocs*., 725 F. Supp. 2d at 340 ("The elements of a First Amendment retaliation claim are dependent on the 'factual context' of the case.").

In his second amended complaint, Ruggiero switches gears a bit. First, plaintiff's renewed pleading eliminates from this action eleven of the named City defendants, leaving only the City, Mayor Tobin, Attorney Van Donsel, Tax Assessor Briggs, Zoning Officer Rhea, Chairperson Hickey, Alderman Silliman, and Officer Myers. Compl. ¶¶ 8-15.

Second, while Ruggiero re-alleges that City officials conspired to have police remove him from at least one public meeting,[3] *see, e.g.*, compl. ¶ 38, this time plaintiff has also

---

[2] A full recitation of the background is included in *Ruggiero I* and will not be repeated here.

[3] This "forcible removal" claim—if understood as one for conspiracy or one based on a Fourth Amendment violation—remains dismissed for the reasons set forth in *Ruggiero I*. However, if one or more of the named defendants directed police or subordinates to remove plaintiff from one or more of these public meetings, that conduct might well be relevant to plaintiff's retaliation claim, which survives dismissal.

included significant factual details about the genesis of his fight with the City and its officials.

As Ruggiero explains, he and "several other landlords" initially sued the City after it enacted Rental Housing Law § 102. Compl. ¶ 23. According to plaintiff, this state court lawsuit theorized that § 102 allowed the City to "conduct warrantless searches in violation of the Fourth Amendment." *Id*. Plaintiff alleges that he and the other landlords were successful in this lawsuit, and that as a result "the City was forced to amend their law to remove their overreach." *Id.*

Ruggiero further alleges that, since winning this state court lawsuit, Mayor Tobin's administration has "prosecuted the plaintiffs in that case for zoning violations disproportionately over the last several years in retaliation for suing the City." Compl. ¶ 24. Among other things, plaintiff alleges that he has been "prosecuted multiple times without probable cause" for the "very same zoning issues" that other, politically connected landlords get away with on a regular basis. *Id*. ¶¶ 29, 56.

For instance, Ruggiero alleges that these "connected landlords" were "given illegal CZOs" that allowed for "higher occupancy" than what is allowed at plaintiff's properties. Compl. ¶ 58. Plaintiff also alleges that because of these and related actions, he has lost substantial revenue from his rental properties. *Id*. ¶ 81.

Upon review, and mindful of Ruggiero's status as a pro se litigant, plaintiff's First Amendment retaliation claim and his related Fourteenth Amendment equal protection claim for selective enforcement of the zoning laws survive dismissal for the reasons discussed below.

To plead a "selective enforcement" claim for equal protection, a plaintiff must allege facts showing that: "(1) 'he, compared with others similarly situated, was selectively treated,

and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff.'" *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 7 (S.D.N.Y. 2017) (quoting *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013).

To be clear, "the Equal Protection Clause does not require perfectly uniform enforcement efforts." *Gray v. Town of Easton*, 115 F. Supp. 3d 312, 320 (D. Conn. 2015), *aff'd sub nom. Gray v. Maquat*, 669 F. App'x 4 (2d Cir. 2016) (summary order) (rejecting selective enforcement claim premised on offhand remarks made by municipal official during public meeting that suggested the municipality was aware that it was "guilty" of "selectively" enforcing its some of its zoning laws).

Rather, the *sine qua non* of a selective enforcement claim is a showing that the selective enforcement action about which the plaintiff complains was based on impermissibly discriminatory or malicious reasons, such as an intention "to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff." *Panzella*, 231 F. Supp. 3d at 7.

Relatedly, "[i]n the context of a private citizen's action against public officials, the plaintiff must show that: '(1) [it] has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [plaintiff's] First Amendment right.'" *Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d 320, 340 (E.D.N.Y. 2010) (quoting Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)); *see also Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018).

As this language indicates, a private citizen claiming retaliation must typically show that they suffered an "actual chill" in their speech as a result of the defendants' misconduct. *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011). However, under certain circumstances a showing of some other "concrete harm" may substitute for the "actual chilling" requirement. *Brink v. Muscente*, 2013 WL 5366371, at *7 (S.D.N.Y. Sept. 25, 2013) (noting that in certain "private citizen cases, various forms of concrete harm have been substituted for the 'actual chilling' requirement"); *see also e.g.*, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) (alleging retaliatory revocation of a building permit); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 371 n.17 (S.D.N.Y. 2011) (finding triable issue of fact on First Amendment retaliation claim where zoning board denied plaintiff a variance).

With the factual allegations of his latest pleading in mind, Ruggiero's retaliation and equal protection claims will be considered together at this early stage of the case. *See, e.g.*, *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 372 (S.D.N.Y. 2011) ("Where, as here, an equal protection claim is based on an alleged First Amendment violation, the former 'coalesces with the latter.'").

A closer look at a few cases helps explain why these claims survive pre-answer dismissal. In *Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir. 1994) (Miner, J.), the plaintiffs owned a residential parcel adjacent to a plastics factory. *Id*. at 189. At some point, the plastics factory ramped up its on-site operations and began violating various provisions of the village's zoning code. *Id*. The plaintiffs complained to various officials, including the village's zoning and planning boards. *Id*. at 190. When their pleas went unanswered, the plaintiffs filed a § 1983 action alleging, *inter alia*, the defendant–officials had "engaged in a

purposeful course of conduct designed to prefer unfairly the commercial interests" of the factory.  *Id.*

In partially reversing the district court's pre-answer dismissal of their complaint, the Second Circuit found that the plaintiffs had adequately pleaded a First Amendment retaliation claim "predicated on the allegation that the [defendant-officials'] failure to enforce the [zoning code] against [the plastics factory] and their acts of misconduct regarding certain zoning decisions were in retaliation for the [plaintiffs'] exercise of their right to free speech."  *Gagliardi*, 18 F.3d at 194.

Since *Gagliardi*, courts in this Circuit have expressed reluctance about dismissing at the pleadings stage a § 1983 First Amendment retaliation claim based on similar patterns of alleged misconduct by municipal officials.[4]  For example, in *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226 (E.D.N.Y. 2009), a homeowner sued the city after her repeated attempts to convince the zoning board, the mayor, and other municipal officials to block the construction of a new real estate development failed.  *Id*. at 230-31.  In refusing to dismiss the plaintiff's retaliation claim, the court relied on the "liberal pleading standard" for this kind of dispute that the Second Circuit set forth in *Gagliardi*.  *Id*. at 241.

Ruggiero has satisfied all three elements of a First Amendment retaliation claim.  First, plaintiff alleges that he engaged in protected conduct when he and other landlords sued the City over § 102.  *Gagliardi*, 18 F.3d at 194 ("The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment.").

---

[4] Although *Gagliardi* was decided pre-*Iqbal*, district courts continue to rely on its reasoning when analyzing a motion to dismiss a First Amendment retaliation claim.  *See, e.g.*, *Reardon v. Keating*, 980 F. Supp. 2d 302, 320 (D. Conn. 2013) (distinguishing the plaintiffs' factual allegations from those set forth in *Gagliardi*); *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 712 (S.D.N.Y. 2011) (same).

Second, Ruggiero alleges that since winning that lawsuit, the City defendants have retaliated against plaintiff (and the other landlords, too) for exercising his First Amendment right to use the judicial process to challenge the rental law. As a general matter, plaintiff's second amended complaint alleges that he received less favorable treatment under the City's zoning and planning laws than other, similarly situated landlords did with respect to other, substantially similar properties.

This differential or unfair treatment includes, but is apparently not limited to, the City's failure to enforce certain zoning laws against the landlords who chose to side with the City and refrained from filing suit over the rental law. *See, e.g., Gagliardi*, 18 F.3d at 195 (finding causation plausibly alleged where defendants "undertook a purposeful and persistent course of conspiratorial noncompliance and nonenforcement" of the zoning laws against certain property owners).

Third, Ruggiero alleges concrete harms as a result of the alleged misconduct, including lost rental revenue, and in one instance plaintiff alleges he was forced to sell a rental property at a loss. *Soundview Assocs.*, 725 F. Supp. 2d at 341; *see also Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 431–32 (S.D.N.Y. 2013) (finding that "harm to [plaintiff's] professional reputation" and other "economic and pecuniary loss" to be sufficient for retaliation claim).

Finally, Ruggiero's Equal Protection selective enforcement claim also survives dismissal at this stage. Plaintiff appears to be claiming that City officials singled him out for enforcement under the zoning code because he exercised his First Amendment right to challenge the lawfulness of § 102 in a state court lawsuit. In other words, plaintiff has alleged that the selective enforcement at issue is motivated by, or based on, an intention "to

punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff."  *Panzella*, 231 F. Supp. 3d at 7.

In sum, Ruggiero's First Amendment retaliation claim and his related Fourteenth Amendment Equal Protection selective enforcement claim will remain for discovery.  *Dougherty*, 282 F.3d at 92 (denying motion to dismiss First Amendment retaliation claim because, *inter alia*, plaintiff alleged "that the entire chronology of events spanning a period of over five years displays a general pattern of egregious treatment by the Board"); *Tomlins*, 812 F. Supp. 2d at 374 (finding fact issue suitable for trial on First Amendment retaliation claim where, *inter alia*, zoning board treated plaintiff differently than other variance applicants).

## III. **CONCLUSION**

Ruggiero's conspiracy, false arrest, malicious prosecution, denial of medical treatment, and state law constitutional claims were dismissed <u>with prejudice</u> in *Ruggiero I*, which means he will not be permitted to pursue them in this litigation.  Because plaintiff's second amended pleading improperly attempts to re-assert one or more of these claims against Officer Myers, he must be dismissed as a defendant in this action.

Importantly, though, *Ruggiero I* also recognized that plaintiff might have a plausible claim for First Amendment retaliation and/or Fourteenth Amendment Equal Protection arising from his acrimonious relationship with City officials.  At the time, *Ruggiero I* speculated that such a claim might be grounded in defendants' conduct during one or more public meetings and invited plaintiff to provide more detail about those meetings and his interactions with City officials.

In his second amended complaint, Ruggiero has again failed to state a retaliation or

equal protection claim based *solely* on the conduct of defendants during the public meetings. However, plaintiff has pleaded sufficient factual allegations to entitle him to conduct discovery into whether one or more of the City defendants took adverse action(s) against him (such as by selectively enforcing certain zoning restrictions against him or by preventing him from lawfully participating in certain public meetings), either in retaliation for his prior state court lawsuit or, relatedly, in a bad-faith effort to punish him for exercising his constitutional right to seek judicial relief.

Ruggiero may pursue those two related claims—and only those claims—against the City, Mayor Tobin, Attorney Van Donsel, Tax Assessor Briggs, Zoning Officer Rhea, Chairperson Hickey, and Alderman Silliman.

Therefore, it is

ORDERED that

1. The City defendants' motion to dismiss is GRANTED in part and DENIED in part;

2. Plaintiff's cross-motion for leave to file a third amended complaint is DENIED;

3. Plaintiff's First Amendment retaliation and Fourteenth Amendment Equal Protection claims against the City, Mayor Tobin, Attorney Van Donsel, Tax Assessor Briggs, Zoning Officer Rhea, Chairperson Hickey, Alderman Silliman REMAIN for discovery and, if appropriate, summary judgment motions;

4. Plaintiff's renewed claim against Officer Myers is DISMISSED WITH PREJUDICE;

5. The Clerk of the Court is directed to TERMINATE Officer Myers as a defendant in this action; and

6. The City, Mayor Tobin, Attorney Van Donsel, Tax Assessor Briggs, Zoning Officer Rhea, Chairperson Hickey, and Alderman Silliman shall file an answer to plaintiff's First

Amendment retaliation and Fourteenth Amendment Equal Protection claims on or before May 17, 2019, fourteen (14) days from the date of this decision.

IT IS SO ORDERED.

Dated: May 3, 2019
Utica, New York.

_____
United States District Judge