UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GERALD RUGGIERO,

                 Plaintiff,

          -v-                        5:17-CV-790

CITY OF CORTLAND,
NEW YORK, BRIAN TOBIN,
individually and in his official
capacity as Mayor, RICHARD
VAN DONSEL, individually
and in his official capacity as
Corporation Counsel, DAVID
BRIGGS, individually and in
his official capacity as Tax
Assessor, ROBERT RHEA,
individually and in his official
capacity as Zoning Officer,
MARY KAY HICKEY,
individually and in her official
capacity as Chairperson of the
Zoning Board of Appeals, and
KATHRYN SILLIMAN,
individually and in her official
capacity as Alderman,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                  OF COUNSEL:

GERALD RUGGIERO
Plaintiff, Pro Se
764 Sleepy Hollow Road
Cortland, NY 13045

OFFICE OF FRANK W. MILLER          FRANK W. MILLER, ESQ.
Attorneys for Defendants           CHARLES C. SPAGNOLI, ESQ.
6575 Kirkville Road                GIANCARLO FACCIPONTE, ESQ.
East Syracuse, NY 13057

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On July 19, 2017, *pro se* plaintiff Gerald Ruggiero ("Ruggiero" or
"plaintiff"), a Cortland-area businessman who invests in rental properties,
filed this 42 U.S.C. § 1983 action against defendants County of Cortland,
New York (the "County"), County District Attorney Mark Suben ("DA
Suben"), the City of Cortland, New York (the "City"), Mayor Brian Tobin
("Mayor Tobin"), Corporation Counsel Richard Van Donsel ("Attorney Van
Donsel"), Tax Assessor David Briggs ("Tax Assessor Briggs"), Zoning Officer
Robert Rhea ("Zoning Officer Rhea"), Director of Administration and Finance
Mack Cook ("Director Cook"), Director of Code Enforcement William
Knickerbocker ("Director Knickerbocker"), Fire Chief Charles Glover ("Fire
Chief Glover"), Zoning Board of Appeals Chairperson Mary Kay Hickey
("Chairperson Hickey"), Planning Commission Member Jim Reeners
("Commission Member Reeners"), Planning Commission Member Troy
Beckwith ("Commission Member Beckwith"), Alderman Kathyrn Silliman
("Alderman Silliman"), Alderman Ken Dye ("Alderman Dye"), Alderman

Thomas Michales ("Alderman Michales"), Alderman John Bennett, Jr. ("Alderman Bennett"), Chief of Police F. Michael Catalano ("Police Chief Catalano"), Deputy Chief of Police Paul Sandy ("Deputy Chief Sandy"), Police Officer Brian Myers ("Officer Myers"), Police Officer Kenneth Bush ("Officer Bush"), and John and Jane Does (the "Does").  Dkt. No. 1.

At the time he filed his complaint, Ruggiero also sought a temporary restraining order that would enjoin the enforcement of certain occupancy restrictions imposed by the City's zoning ordinances.  Dkt. No. 5.  According to plaintiff's filings in support of that request, injunctive relief was warranted because the City and various City officials, many of whom were named as defendants in this action, were selectively enforcing the zoning laws against him.  That motion was denied on July 26, 2017.  Dkt. No. 6.  Thereafter, the named defendants answered plaintiff's complaint.   Dkt. Nos. 19, 27.

On August 29, 2017, Ruggiero amended his complaint.  Dkt. No. 32.  This pleading asserted eight federal civil rights claims and a related cause of action based on the New York State Constitution.  *Id*.  The named defendants answered this new pleading, too.  Dkt. Nos. 35, 38.

On January 8, 2018, the County and DA Suben (collectively the "County defendants") moved under Federal Rule of Civil Procedure ("Rule") 12(c) for a judgment on the pleadings dismissing Ruggiero's first amended complaint to the extent it asserted one or more cognizable claims against them.  Dkt. No.

51.  The City, Mayor Tobin, Attorney Van Donsel, Tax Assessor Briggs, Zoning Officer Rhea, Director Cook, Director Knickerbocker, Fire Chief Glover, Chairperson Hickey, Commission Member Reeners, Commission Member Beckwith, Alderman Silliman, Alderman Dye, Alderman Michales, Alderman Bennett, Police Chief Catalano, Deputy Chief Sandy, Officer Myers, and Officer Bush (collectively the "City defendants" or "defendants") also filed a Rule 12(c) motion seeking dismissal of the claims asserted against them.  Dkt. No. 54.  Plaintiff opposed both filings.  Dkt. Nos. 55, 59.

On November 14, 2018, the County defendants' motion to dismiss was granted and the City defendants' motion to dismiss was granted in part and denied in part.  *Ruggiero v. City of Cortland*, 2018 WL 5983505 (N.D.N.Y. Nov. 14, 2018) ("*Ruggiero I*").  *Ruggiero I* concluded that prosecutorial immunity shielded DA Suben, and therefore the County, from plaintiff's § 1983 claims for false arrest and malicious prosecution.  2018 WL 5983505 at *9–*11.  Those claims were dismissed with prejudice and those parties were terminated as defendants in this action.  *Id.*

*Ruggiero I* also granted the City defendants' request to dismiss with prejudice plaintiff's § 1983 and state law constitutional claims for false arrest, malicious prosecution, and denial of medical treatment.  2018 WL 5983505 at *12–*18.  Importantly, however, *Ruggiero I* gave plaintiff leave to

amend his complaint to attempt to re-plead his § 1983 claims for retaliation and equal protection. *Id*. at *18.

On December 14, 2018, Ruggiero filed a second amended complaint. Dkt. No. 67. Shortly thereafter, the City defendants moved under Rule 12(b)(6) to dismiss this new pleading. Dkt. No. 71. According to the City defendants, plaintiff's second amended complaint failed to plausibly allege a § 1983 retaliation or equal protection claim and improperly re-asserted claims that had already been dismissed with prejudice in *Ruggiero I*. *Id*. Plaintiff opposed and cross-moved for leave amend. Dkt. No. 73.

On May 3, 2019, the City defendants' motion to dismiss was granted in part and denied in part. *Ruggiero v. City of Cortland*, 2019 WL 1978623 (N.D.N.Y. May 3, 2019) ("*Ruggiero II*"). *Ruggiero II* denied plaintiff's request for leave to further amend and refused to permit plaintiff to reassert the claims that had already been dismissed with prejudice. *Id*. at *4. However, *Ruggiero II* concluded that plaintiff had:

> pleaded sufficient factual allegations to entitle him to conduct discovery into whether one or more of the City defendants took adverse action(s) against him (such as by selectively enforcing certain zoning restrictions against him or by preventing him from lawfully participating in certain public meetings), either in retaliation for his prior state court lawsuit or, relatedly, in a bad-faith effort to punish him for exercising his constitutional right to seek judicial relief.

*Ruggiero II*, 2019 WL 1978623 at \*7.

*Ruggiero II* explained that plaintiff could "pursue those two related claims—and only those claims—against the City, Mayor Tobin, Attorney Van Donsel, Tax Assessor Briggs, Zoning Officer Rhea, Chairperson Hickey, and Alderman Silliman." *Id*. at \*8.  The City defendants answered what remained of plaintiff's second amended complaint and the parties spent the better part of a year in discovery on those claims.  Dkt. No. 78, 89.

On June 26, 2020, the City defendants requested a conference with U.S. Magistrate Judge Andrew T. Baxter to discuss the issue of sanctions because, in their view, they had "uncovered significant abuse of the judicial process by Plaintiff which occurred prior to, and during, the instant litigation."  Dkt. No. 92.

As defendants later explained, in July of 2015 Linda Ferguson, then a City Alderman, permitted Ruggiero to "view, read, print, and keep all information and email communications contained in her City issue[d] email account, which included communications between the City Council and their attorney."  Dkt. No. 99.  Defendants further argued that, *inter alia*, plaintiff recorded a conversation with former Alderman Ferguson in which she acknowledged that she permitted plaintiff "copy and keep" information from her work laptop.  *Id*.

At a telephone conference on July 15, 2020, Judge Baxter denied the City defendants' request for leave to move for sanctions.  Dkt. No. 96.  In so doing, Judge Baxter reasoned that the alleged abuse occurred prior to the filing of Ruggiero's current federal civil rights action.  Text Minute Entry for 7/15/2020.  Judge Baxter concluded that any challenge to the evidence that plaintiff had obtained through possibly improper means would be "more appropriately raised before District Judge Hurd in connection with dispositive motions or by way of in limine motions prior to any trial." *Id*. Defendants appealed Judge Baxter's order to this Court.  Dkt. No. 99.

On September 10, 2020, this Court rejected defendants' arguments and affirmed Judge Baxter's order.  Dkt. No. 107.  Thereafter, the parties completed discovery in Ruggiero's remaining claims.  Dkt. No. 113.

On January 22, 2021, the City defendants moved under Rule 56 for summary judgment on Ruggiero's remaining claims.  Dkt. No. 115.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. **BACKGROUND**

The background is taken from defendants' Statement of Material Facts, Dkt. No. 115-1, Ruggiero's response to that statement of facts, Dkt. No. 135-1, plaintiff's own Statement of Material Facts, Dkt. No. 121, and defendants' response to that statement of facts, Dkt. No. 140-1.  Because these four

documents are voluminous, filled with disputes over matters that are of marginal relevance, and include lengthy recitations of various immaterial facts, they are only very briefly summarized below.

In 1978, the City enacted legislation that limited single dwelling residential units to three unrelated occupants. Pl.'s Facts ¶ 1. Although certain definitions and code provisions have changed over the years, the same basic rule remains on the City's books today. *Id*. ¶¶ 2–3. Over the years and at various times, the City has enforced this occupancy limit by issuing appearance tickets to property owners. *Id*. ¶ 7. Thus, absent a variance or special use permit from the City, it is unlawful for more than three unrelated people to live together in a single dwelling unit. *Id*. ¶ 4.

Ruggiero is trained as a Certified Public Account ("CPA").[1] Pl.'s Response to Defs.' Facts ¶ 5. In 1989, plaintiff graduated from college and moved to the City of Cortland. *Id*. ¶ 1. He soon began buying up properties. *Id*. ¶¶ 1–2. Plaintiff rented them out to students and non-students alike. *Id*. In 2010, plaintiff and a group of other City landlords filed suit in Supreme Court, Cortland County seeking a declaration that certain provisions of the City Code that applied to rental properties were unconstitutionally vague or otherwise unlawful. *Id*. ¶ 3.

---

[1] Plaintiff's CPA license has lapsed. Pl.'s Response to Defs.' Facts ¶ 5.

In particular, Ruggiero and the other landlord-plaintiffs challenged a City ordinance that (1) required "an owner to obtain a rental permit before renting or leasing any rental building or structure in the City," (2) limited "the occupancy of dwelling units to a 'family,' as that term is defined [elsewhere]," and (3) obligated rental property owners "to complete a form disclosing certain information with respect to their units, including 'the maximum number of tenants in each and every dwelling unit[.]'" *Grodinsky v. City of Cortland*, 82 N.Y.S.3d 192, 193 (NY. App. Div. 3d Dep't 2018).

In 2012, with the *Grodinsky* rental litigation still pending in state court, City residents elected Mayor Tobin, a former City Alderman.  Pl.'s Response to Defs.' Facts ¶ 21.  According to plaintiff, Mayor Tobin "led the Housing Committee that wrote the rental permit law." *Id*. ¶ 22.

In 2013, Attorney Van Donsel joined the Tobin administration as corporation counsel for the City.  Defs.' Facts ¶ 27.  Attorney Van Donsel handled personnel matters for the City, union negotiations, contract review, and gave legal advice to various City officials. *Id*. ¶ 28.  The other named defendants would eventually join the Tobin administration as officials or employees responsible for, *inter alia*, enacting or enforcing the City's zoning laws and ordinances. *See generally* Pl.'s Facts; Defs.' Facts.

In 2015, the City moved to dismiss the landlord-plaintiffs' civil rights lawsuit over the rental ordinance. *Grodinsky*, 82 N.Y.S.3d at 194.  The

Supreme Court rejected most of the plaintiffs' claims. *Id.* The plaintiffs appealed, but the Third Department affirmed. *Id.* Ruggiero asserts that as a result of his participation in the *Grodinsky* rental litigation, City officials have singled him (and the other landlord-plaintiffs) out for enforcement and prosecution of zoning violations while allowing other, politically connected landlords (like the Calabro and Armideo families) to get away with similar misconduct. *See, e.g.*, Pl.'s Facts ¶¶ 59, 61, 77; Pl.'s Response to Defs.' Facts ¶¶ 74–75, 80.

## III.  <u>LEGAL STANDARD</u>

The entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is material for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In assessing whether there are any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted). Summary judgment is inappropriate where a "review of the record reveals sufficient evidence for a

rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

## IV. DISCUSSION

As an initial matter, Ruggiero continues to benefit from the "special solicitude" appropriately applied to *pro se* filings. *See, e.g.*, *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014) (noting that the Circuit is "less demanding" of *pro se* litigants "generally, particularly where motions for summary judgment are concerned"). "This lower standard for pro se litigants does not, however, relieve the *pro se* litigant of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Sec. & Exch. Comm'n v. Penn*, 225 F. Supp. 3d 225, 233 (S.D.N.Y. 2016) (cleaned up).

In *Ruggiero II*, the City defendants' motion to dismiss was denied because plaintiff's second amended complaint plausibly alleged related § 1983 claims for retaliation and equal protection. 2019 WL 1978623 at *5. This conclusion was based primarily on plaintiff's factual allegations about misconduct by certain City officials. According to plaintiff, these officials had retaliated against him for his participation in the *Grodinsky* lawsuit by singling him out for prosecution under the zoning laws while allowing other landlords with the same or similar violations to enjoy the benefits of non-enforcement. *See id.*

Those allegations were enough to survive pre-answer dismissal. But more concrete evidence is required to survive summary judgment. The question at

- 11 -

this stage of the proceedings is whether the fact record, viewed in the light

most favorable to Ruggiero, reveals sufficient evidence for a rational jury to

find in his favor on one or both of these § 1983 claims. *See, e.g.*, *Gallo v.*

*Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)

(Cardamone, J.) ("[T]he trial court's task at the summary judgment

stage . . . is carefully limited to discerning whether there are any genuine

issues of material fact to be tried, not to deciding them.").

"Where, as here, an equal protection claim is based on an alleged First

Amendment violation, the former coalesces with the latter." *Tomlins v. Vill.*

*of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 372 (S.D.N.Y.

2011) (cleaned up). "Where this is the case, the equal protection claim is

dependent on the First Amendment claim; in other words where the First

Amendment claim has failed, the equal protection claim fails, too." *Id.*

"The elements of a First Amendment retaliation claim are dependent on

the 'factual context' of the case." *Soundview Assocs. v. Town of Riverhead*,

725 F. Supp. 2d 320, 340 (E.D.N.Y. 2010) (quoting *Williams v. Town of*

*Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008)). When a private citizen has sued

public officials, the First Amendment requires the plaintiff to show that

(1) his conduct was protected by the First Amendment and (2) this conduct

prompted or substantially caused defendants' adverse action. *See, e.g.*, *Musco*

*Propane, LLP v. Town of Wolcott Planning & Zoning Comm'n*, 536 F. App'x 35, 39 (2d Cir. 2013) (summary order).[2]

Ruggiero has identified his participation in the *Grodinsky* rental litigation as conduct protected by the First Amendment.  Pl.'s Opp'n, Dkt. No. 135-2 at 3.[3]  *Ruggiero II* held that this satisfies the first element of plaintiff's § 1983 retaliation claim.  2019 WL 1978623 at *7.  The same conclusion remains appropriate on summary judgment.  *See, e.g.*, *Musco Propane, LLP*, 536 F. App'x at 39 ("There is no reasonable dispute that [plaintiff's] . . . filing of lawsuits to challenge the Zoning Commission's decisions were activities protected by the First Amendment."); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (Miner, J.) ("The rights to complaint to public officials and to seek administrative and judicial relief are protected by the First Amendment.").

Upon review, however, Ruggiero has failed to adduce sufficient evidence to raise a triable issue of fact as to a causal connection between his participation in the *Grodinsky* rental litigation and the various zoning enforcement actions about which he complains.  As discussed *supra*, the *Grodinsky* litigation was

---

[2]  Typically, a First Amendment retaliation claim also requires a showing that the defendant's conduct effectively chilled the plaintiff's exercise of his rights.  *Tomlins*, 812 F. Supp. 2d at 371 n.17.  However, that is not required where the plaintiff relies on other forms of harm, such as the denial of building permits or variances.  *Id.*

[3]  Pagination corresponds to CM/ECF.

first filed in 2012 (prior to Mayor Tobin taking office) and not concluded until the Third Department resolved the appeal in 2018.  In addition to *Grodinsky*, Ruggiero engaged in other state court litigation against the City, including an Article 78 proceeding begun on July 3, 2018 to compel the issuance of a rental permit at one of his properties.  *See* Pl.'s Opp'n at 7–8.

But the mere fact of ongoing litigation does not mean that every single adverse action taken by a City official during that same time period automatically becomes actionable as a § 1983 retaliation claim.  Instead, Ruggiero must identify some basis on which a rational fact finder could conclude that retaliatory animus prompted or substantially caused one or more of the adverse actions.  *See, e.g.*, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) ("The ultimate question of retaliation involves a defendants' motive and intent . . . . ").

For their part, the City defendants have established that Ruggiero repeatedly clashed with various City officials over zoning and occupancy restrictions.  Defs.' Mem., Dkt. No. 115-2 at 12–19.  Defendants have also established in detail how the various violations and notices issued to plaintiff over this long time period were appropriately connected to actual alleged violations rather than the product of some kind of gratuitous, bad-faith misconduct.  *Id*.

- 14 -

To be sure, Ruggiero has "disputed" many of the material facts on which these assertions are based. *See, e.g.*, Pl.'s Response to Defs.' Facts ¶¶ 106–49. But as defendants correctly explain in their reply memorandum, most of plaintiff's "disputes" are based on his own conclusory allegations about the possible motivation lurking behind certain actions by these officials. Defs.' Reply, Dkt. No. 140 at 10–14.

A careful review of the materiality of these various factual disputes confirms that, even when viewed in the light most favorable to him, Ruggiero has failed to establish a jury question on retaliatory causation. Instead, what plaintiff has submitted is evidence of a host of zoning and code enforcement actions attributable to various City defendants that fall well within the realm of reasonable official conduct but which plaintiff insists, based on his own conclusory assertions, were actually motivated by retaliatory animus.

Conclusory assertions about wrongdoing are not enough to survive summary judgment. As other courts have observed, "not every wrong or ill-informed decision by a local government official is grounds for a federal constitutional cause of action. Nor is a nefarious purpose to be presumed from a town's incomplete enforcement of the law." *Gray v. Town of Easton*,

115 F. Supp. 3d 312, 317 (D. Conn. 2015) (rejecting equal protection claim based on enforcement dispute).[4]

## V.  CONCLUSION

The evidence, viewed in the light most favorable to Ruggiero, would not permit a rational jury to find in his favor on the remaining claims.

Therefore, it is

ORDERED that

1.  The City defendants' motion for summary judgment is GRANTED; and

2.  Plaintiff's second amended complaint is DISMISSED.

The Clerk of the Court shall enter a judgment accordingly, terminate any pending motions, and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  September 16, 2021
        Utica, New York.

---

[4]  Although it is not necessary to address because the claims fail on the merits, qualified immunity would almost certainly attach to all of the conduct about which plaintiff complains.